# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARKIST BANNISTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 18-cv-01397 (APM) |
| ) | |
| **UNITED STATES PAROLE COMMISSION,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Defendant United States Parole Commission has denied parole multiple times to Plaintiff Markist Bannister, a federal prisoner who suffers from severe paranoid schizophrenia. The most recent denial of parole occurred in 2017. Plaintiff alleges that, for years, the Commission's denials violated the Rehabilitation Act because the Commission failed to reasonably accommodate his mental illness. As relief, Plaintiff does not seek parole. Instead, he asks the court to compel the Commission to re-evaluate his parole eligibility in light of reasonable accommodations that might make him otherwise qualified for parole.

This matter comes before the court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. The court grants Defendants' Motion but declines to dismiss this action. The Commission did not violate the Rehabilitation Act because it conducted an individualized assessment of Plaintiff's eligibility for parole; it appropriately considered Plaintiff's disability as it pertains to future dangerousness; and it properly evaluated the reasonable

accommodations that Plaintiff sought but nevertheless found him ineligible for parole. The court therefore dismisses with prejudice the failure-to-accommodate aspect of his claim.

The court, however, dismisses the Complaint without prejudice insofar as Plaintiff challenges the Commission's failure to adopt regulations to implement the Rehabilitation Act. Plaintiff asserts such claim under the Rehabilitation Act, but the Rehabilitation Act does not provide a private cause of action to enforce the congressional mandate requiring federal agencies to promulgate implementing regulations. Such challenge must be brought under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(1) (providing that courts "shall compel agency action unlawfully withheld or unreasonably delayed"). Accordingly, the court will afford Plaintiff an opportunity to amend his Complaint to bring a claim under the Administrative Procedure Act.

## II. BACKGROUND

### A. Factual Background

Plaintiff Markist Bannister is a federal prisoner in Ayers, Massachusetts, serving a sentence of five to thirty years for robbery and aggravated assault. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 1. The Bureau of Prisons classified Plaintiff—who suffers from paranoid schizophrenia, attention-deficit hyperactivity disorder, and an intellectual disability—at its most severe mental health classification. *Id.* ¶¶ 3, 27, 34, 37. When Plaintiff takes his medications as prescribed, he has a bright affect, euthymic mood, and friendly interaction style. *Id.* ¶ 31. The Bureau of Prisons has recognized that Plaintiff would be able to function in the community, if he were placed in "a mental health group facility with psychiatric and mental health services." *Id.* ¶ 33.

Defendant U.S. Parole Commission ("the Commission") has denied Plaintiff parole seven times since 2004. *Id.* ¶¶ 4, 10–13.

### 1. *The 1987 Guidelines*

Since 2010, the Commission has applied the now-defunct D.C. Parole Board's 1987 Guidelines ("the 1987 Guidelines"). Under the 1987 Guidelines, the Commission first calculates a "Salient Factor Score" ("SFS"), which accounts for, among other things, the person's criminal history, prior commitments, age at time of offense, recent commitment-free period, status of prisoner at time of current offense, and history of drug abuse. *Id.* ¶ 19 (citing Compl., ECF No. 1-1 [hereinafter Guidelines], § 204.4). The SFS categorizes an applicant as either low, fair, moderate, or high risk. *See* Guidelines § 204.17. Once the risk category is determined, the Commission considers pre- and post-incarceration factors—such as the violent nature of the offense, disciplinary infractions in prison, and achievement in prison programming—which produces a Grid Score. *Id.* § 204.18, Compl. ¶ 22. At an initial parole hearing, offenders with a Grid Score of 0, 1 or 2 shall be granted parole, and applicants with a Grid Score of 3, 4 or 5 shall be denied parole. *See* Guidelines § 204.19. For subsequent hearings, or "rehearings," the Commission takes the prior hearing's Grid Score and adjusts it based on the offender's interim institutional record. *Id.* § 204.21. Applicants with a Grid Score of 0 up to 3 are granted parole, and applicants with a score of 4 or 5 are denied parole. *Id.* The Commission may, "in unusual circumstances," deviate from this "strict" scoring system, so long as it explains the departure in writing. *Id.* § 204.22.

### 2. *The Commission's Denials of Parole*

In 2004 and 2007, the Commission denied Plaintiff parole. *See* Compl. ¶¶ 38, 42. In both instances, the Commission improperly applied the Commission's own guidelines adopted in 2000,

3

instead of the 1987 Guidelines. *See id.* ¶¶ 39, 43; *see Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008) (holding that the Commission's application of the 2000 Guidelines to offenders, like Plaintiff, who violated the D.C. Code before August 5, 1998, violated the Ex Post Facto Clause). Following the decision in *Sellmon v. Reilly*, in 2010 the Commission conducted a retroactive review of its previous denials and, applying the appropriate 1987 Guidelines, determined that Plaintiff would have received a Grid Score of 3 in 2004 and a Grid Score of 4 in 2007. *See id.* ¶¶ 43–44. As to 2007, the Commission determined that Plaintiff's Grid Score would have increased by one point to 4 because of negative institutional behavior since 2004. The Commission also found that Plaintiff would not have received a one-point reduction due to his lack of programming achievement, which the Commission expressly recognized was "as a result" of his paranoid schizophrenia and prior substance abuse. *See id.* ¶ 45.

At his next parole reconsideration hearing held in 2010, Plaintiff again received a Grid Score of 4. *See id.* ¶ 50. Once more, the Commission denied Plaintiff a point reduction because of his lack of programming "due to [his] diagnosis" of paranoid schizophrenia and prior substance abuse. *See id.* ¶ 49; *see also id.*, Ex. B, ECF No. 1-2, at 1.

Plaintiff's Grid Score improved at his next rehearing. In 2011, Plaintiff received a Grid Score of 3 because he had no intervening disciplinary infractions and he had completed programming; in addition, a staff psychologist testified that Plaintiff could live in a group home placement. *See* Compl. ¶¶ 52, 53, 56. Nonetheless, the Commission denied Plaintiff parole, explaining in its Notice of Action that "your mental illness and inability to function in an open setting makes you a more serious risk if released." *See id.* ¶¶ 54–55. In 2013, Plaintiff's Grid Score increased by a point to a 4 due to intervening disciplinary infractions, rendering him ineligible for parole. *See id.* ¶ 62.

4

In 2015, Plaintiff appeared for another parole hearing. *See id.* ¶ 68. He had incurred no new disciplinary infractions since his last hearing. And, even though he had completed some programming in the intervening period—including anger management, counseling, and a mental health support group—the Commission did not deduct one point for program achievement because Plaintiff had failed to participate in a victim impact or a General Educational Development ("GED") course. *See id*. ¶¶ 69–70. Plaintiff's Grid Score therefore remained a 4, and the Commission again denied Plaintiff parole. *See id.* ¶ 67; *see also id.*, Ex. F, ECF No. 1-6, at 3.

In 2017, Plaintiff had another parole hearing. This time, before the hearing and through counsel, he wrote the Commission requesting that the "Commission accommodate his mental disability in rendering a decision on his parole application." *See id.* ¶ 78; *see also id.*, Ex. E, ECF No. 1-5 [hereinafter Ex. E], at 1. Plaintiff alleged that the Commission had committed errors in past hearings, including "consider[ing] factors . . . that are related to [Plaintiff's] mental disability" and "not giv[ing] credit for programming . . . because [Plaintiff] had been unable to secure a [GED] degree . . . due to his disability." Ex. E at 1–2. Plaintiff asked the Commission to "depart[ ]" from the 1987 Guidelines and proposed five "steps" the Commission should take to accommodate Plaintiff's disability. *See id.* at 2. The court discusses these proposed "steps" in detail below, but for present purposes it is sufficient to note that the Commission did not formally respond to Plaintiff's request. *See id.* ¶ 78.

The 2017 hearing produced an increased Grid Score of 5. Plaintiff's negative institutional behavior since his last hearing, which included an assault without serious injury, property destruction, and bodily harm threats, resulted in the addition of a point from his 2015 Grid Score. *See id.* ¶¶ 78, 80; *see also id.*, Ex. F, ECF No. 1-6 [hereinafter Ex. F], at 4. Additionally. the Commission did not grant a point reduction for programming, "even though the hearing examiner

recognized that [Plaintiff] 'has significant mental health issues, which interfere with his institutional adjustment and perhaps ability to maintain a job assignment and participate in programs.'" *Id.* ¶ 81; Ex. F at 4. The Commission acknowledged that "[Plaintiff's] release plan as indicated on the progress report should be to a residential facility, which can address his dual diagnoses," but concluded that, "[i]t is doubtful [Plaintiff] will ever achieve a paroleable Grid Point Score." Ex. F. at 4.

B.  **Procedural Background**

Plaintiff filed this action on June 13, 2018. *See* Compl. He named four Defendants, the U.S. Parole Commission ("the Commission") and three individual Commissioners acting in their official capacities—Patricia Wilson Smoot, Patricia K. Cushwa, and Charles T. Massarone. Compl. ¶¶ 10–13. On August 27, 2018, Defendants moved to dismiss, or in the alternative, for summary judgment. *See* Defs.' Mot. to Dismiss, ECF No. 11 [hereinafter Defs.' Mot.], Defs.' Mem. in Support of Mot. to Dismiss, ECF No. 11-1 [hereinafter Defs.' Mem.]. Defendants sought dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), as well as for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 7–8. Alternatively, they moved for summary judgment. *See id.* at 8–9.

During oral argument held on March 15, 2019, the Commission conceded that the court has subject matter jurisdiction over this matter. The court agrees with that assessment. *See Davis v. U.S. Sentencing Com'n*, 716 F.3d 660, 665 (D.C. Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)) ("Claims that 'will not *necessarily* imply the invalidity of confinement or shorten its duration' are not at the 'core' of habeas and therefore may be pursued through other causes of action."). The court therefore only addresses Defendants' Rule 12(b)(6) arguments.[1]

---

[1] The court likewise does not reach Defendants' argument that Plaintiff cannot challenge the Commission's denial of parole. Defs.' Mem. at 12–14. Plaintiff does not seek review of the Commission's *denials*, but rather the *process of*

6

## III. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A court must determine whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations need not be "detailed," but they must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"The court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States,* 677 F.3d 471, 476 (D.C. Cir. 2012) (citation and internal quotation marks omitted). "Factual allegations, although assumed to be true, must still be enough to raise a right to relief above the speculative level." *Id.* (citation and internal quotation marks omitted). In assessing a motion to dismiss, a court can look at "documents either attached to or incorporated [by reference] in the complaint." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Mpoy v. Rhee*, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014).

## IV. DISCUSSION

The parties agree on three key threshold matters that narrow the court's analysis. First, Defendants do not dispute that, as a general matter, the Rehabilitation Act applies to the

---

*denials* and, specifically, whether the Commission disregarded reasonable accommodations that might have made him parole eligible.

7

Commission's parole determinations. *See* Def.'s Mem. at 15 (citing *Thompson v. Davis*, 295 F.3d 890, 896–99 (9th Cir. 2002) (holding that the Americans with Disabilities Act applies to state paroling authorities)); *see also* Hr'g Tr. (draft), March 15, 2019, at 42 (the Commission's counsel replying "no dispute" to assertion that Rehabilitation Act applies to the paroling process). Second, Plaintiff concedes the Commission *can consider* an offender's disability—here, his paranoid schizophrenia—in assessing the offender's "future dangerousness" when evaluating his suitability for parole. *See* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., ECF No. 13 [hereinafter Pl.'s Mem.], at 24. In other words, unlike protected classifications such as race, gender, national origin, or religion, Plaintiff here does not take the position that a paroling authority is in all instances forbidden from factoring an offender's disability into an individual parole decision. Rather, Plaintiff's position is that the Commission must consider ways in which an offender's disability can be reasonably accommodated when deciding whether to grant parole. *See id.* ("Mr. Bannister is contending that the Commission must . . . include in its individualized assessment whether a disability is linked to a negative factor, and whether a reasonable accommodation would mitigate the concerns arising from that disability and facilitate parole."). Third, although his Complaint details parole decisions dating back to 2004, Plaintiff recognizes that only the denials in 2015 and 2017 are actionable due to the Rehabilitation Act's statute of limitations.[2] *See also* Hr'g Tr. (draft), March 15, 2019, at 23 (Plaintiff counsel replying "[i]n terms of the statute of limitations, yes," when asked "would you agree with me that only the 2015 and 2017 determinations are before me").

---

[2] Although the statute of limitations under the Rehabilitation Act is unresolved in this Circuit as between one or three years, the court will adopt Defendants' assumed period of three years. *See* Defs.' Mem. at 19–20 (citing *Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 95 (D.D.C. 2016)).

Additionally, for present purposes, the court assumes that the process by which the Commission makes an *individual* parole determination—as distinct from a case alleging categorical exclusion of a group of offenders based on a common disability—is subject to review under the Rehabilitation Act. Relying on the Ninth Circuit's decision in *Thompson v. Davis*—a case in which the plaintiffs claimed that the state parole authority was systematically denying parole based on drug addiction—Defendants take the position that "the only thing forbidden" under the Rehabilitation Act "is to *categorically* exclude from consideration all people with a particular disability." Defs.' Mem. at 17–18 (citing *Thompson*, 295 F.3d at 898 n.4). So long as the paroling authority makes an individualized assessment of parole suitability, Defendants posit, such decision-making is beyond the reach of the Rehabilitation Act. *See id.* at 18–20. The court need not weigh in on this legal question. For reasons that will become apparent, the court in this case can assume that the Rehabilitation Act reaches the type of individual paroling decisions challenged here by Plaintiff.

With these parameters in mind, the court proceeds to address whether the Commission's denials of parole in 2015 and 2017 violated the Rehabilitation Act.

### A. The Commission Complied with the Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To make out a claim, a plaintiff must plead sufficient facts establishing that:

> (1) [he is] disabled within the meaning of the Rehabilitation Act,
> (2) [he is] otherwise qualified, (3) [he was] excluded from, denied
> the benefit of, or subject to discrimination under a program or

activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds.

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008); *see also Colbert v. District of Columbia*, 110 F. Supp. 3d 251, 255 (D.D.C. 2015). "The Act does not . . . guarantee the handicapped equal results" with regard to federally funded services. *Alexander v. Choate*, 469 U.S. 287, 304 (1985). Rather, it requires that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the [federal executive agency] offers." *Id.* at 301. "[T]o assure meaningful access, reasonable accommodations in the [federal agency's] program or benefit may have to be made." *Id.*

In this case, Plaintiff has not stated a claim under the Rehabilitation Act because he has not plausibly alleged that the Commission failed to consider "reasonable accommodations" that might have made him "otherwise qualified" for parole. The court starts with the denial of parole in 2017. Plaintiff obliquely defines the reasonable accommodation that the Commission did not purportedly consider in 2017. *Cf. Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) (stating, on a motion for summary judgment, the plaintiff "must describe" the reasonable accommodation that would make her otherwise qualified). In paragraph 78 he references, and attaches to his Complaint, the letter that he sent to the Commission in advance of the hearing that sought "accommodations under the Rehabilitation Act." Compl. ¶ 78. That letter asked the Commission to take the following "steps" to accommodate his disability:

> 1. As a general matter, [Plaintiff's] parole eligibility should not be negatively affected by his mental impairment (schizophrenia). Decisions that are predicated directly or indirectly on the basis of his medical diagnosis or the symptoms of his mental disability are not permitted under the Rehabilitation Act.
>
> 2. Since his parole hearing in 2015, Mr. Bannister has spent a significant amount of time in the N1 psychiatric unit at FMC Devens. Residency in this unit, as opposed to the general

population, relates to Mr. Bannister's mental impairment and *should not be considered* as a factor in his parole proceedings.

3. Since his parole hearing in 2015, Mr. Bannister's record reflects some minor disciplinary incidents. These incidents relate to Mr. Bannister's mental impairment and *should not be considered* as a factor in his parole proceedings.

4. As described above, Mr. Bannister's inability to complete programming *should not be considered* as a factor in his parole proceedings.

5. If the U.S. Parole Commission identifies other factors that would prevent Mr. Bannister from receiving parole, the Commission should consider whether those factors related to Mr. Bannister's diagnosed schizophrenia or a symptom of schizophrenia. If so, then those factors *should not be considered* in his parole proceedings.

Compl., Ex. E, at 2 (emphasis in original). With perhaps the exception of "step" number four, none of these requested "accommodations" qualify as remotely "reasonable."

All of the "steps," except the fourth, essentially ask the Commission to disregard Plaintiff's schizophrenia and discount the ways in which that disability has manifested itself in Plaintiff's past institutional behavior and how it might affect him in the future. That audacious request, perhaps not surprisingly, is fundamentally at odds with the law. By statute, the Commission is required to consider, if available and relevant, "reports of physical, mental, or psychiatric examination of the offender." 18 U.S.C. § 4207(5) (1976). The Commission's regulations are to the same effect. *See* 28 C.F.R. § 2.19(a)(5) (stating that the Commission "shall consider," if available and relevant, "[r]eports of physical, mental, or psychiatric examination of the offender"). Moreover, nothing in the Rehabilitation Act forecloses the Commission from considering a person's disability "in making an individualized assessment of [an offender's] future dangerousness . . ." *Thompson*, 295 F.3d at 898 n.4; *see also Crowell v. Massachusetts*, 477 Mass. 106, 113 (Ma. 2017) (observing that "the board's important role in protecting society from early

release of dangerous persons means that the board must be able to consider whether the symptoms of a prisoner's disability mean that he or she has a heightened propensity to commit crime while released on parole"); *cf. Am. Council of the Blind*, 525 F.3d at 1266 (stating that a defendant may assert, as an affirmative defense to liability, that accommodating the plaintiff's disability would constitute an undue burden). To the contrary, the court in *Thompson* recognized that "[a] person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole." *Thompson*, 295 F.3d at 898 n.4. Plaintiff's request that the Commission ignore or discount his disability therefore finds no support in the Rehabilitation Act.

Plaintiff's requested fourth "step"—that the Commission not hold against him his inability to complete certain programming—even if granted in full, would not have made Plaintiff "otherwise qualified" for parole in 2017. The 1987 Guidelines provide that an offender may receive a one-point reduction in his Grid Score for completing recommended programming. *See* Guidelines, Appendix 2-1, at 2-34[3]; *see also* Compl. ¶ 45. In 2017, Plaintiff received a Grid Score of five, *see* Ex. F at 4, and did not receive the one-point reduction, Compl. ¶ 81. But even if the Commission had somehow accommodated for Plaintiff's lack of programming since his last hearing, *see* Ex. F at 4, by, for example, granting Plaintiff a one-point reduction, Plaintiff, at best, would have received a Grid Score of 4, still rendering him ineligible for parole. This requested accommodation therefore would not have made him "otherwise qualified." *See Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) (defining an "otherwise qualified individual" as "one who is able to meet all of the program's requirements in spite of his handicap").

---

[3] This pagination is internal to the Guidelines as provided. The ECF pagination is at Compl., ECF No. 1-1, at 53.

Plaintiff's Complaint alludes to another accommodation that might qualify him for parole: "a group home placement." Compl. ¶ 56. The quoted paragraph from the Complaint, however, concerns a parole assessment of Plaintiff in 2011, not 2017, and Plaintiff did not specifically ask for such consideration in 2017. *See id.* In any event, the record is clear that the Commission *did* in fact consider group-home placement in 2017. The Commission had before it a "detailed Mental Status Update," prepared in early May 2017. Ex. F. at 4; Def.s' Mem., Ex. C, ECF No. 11-3, at 12–17. That Update made a "recommended release plan . . . to a dual diagnosis Residential Treatment Facility." Ex. F at 4; *see also* Def.s' Mem., Ex. C, at 17 ("[H]e is functioning at his base line and will require[ ] a mental health group facility with psychiatric and mental health services readily available in order to facilitate his functioning in the community."). The Commission considered the Update yet concluded that Plaintiff's "inability to comply with institutional rules is an indicator that [he is] a high risk [to] commit new crimes when released to the community." Def.s' Mem., Ex. K, at 52 (further stating that "[t]he Commission has considered the information provided at your hearing pertaining to your mental illness"); *see also* Ex. F at 4 ("A detailed Mental Status Update is included for the reader[']s review."). Thus, in 2017, the Commission did precisely what Plaintiff says it should have done: it considered a residential treatment facility as a reasonable accommodation that would make Plaintiff suitable for parole. Even Plaintiff does not contend that the Commission's rejection of that accommodation is reviewable.

That leaves the parole denial in 2015. As to that year, the court can offer no meaningful relief. It would be utterly futile to order the Commission to reconsider its 2015 decision simply to take account of potential reasonable accommodations when the Commission concluded in 2017 that no reasonable accommodation would make Plaintiff otherwise qualified for parole. The court

simply cannot ask the Commission to transport itself back to 2015 and consider Plaintiff's eligibility at that time. Time did not stand still. Such relief would require the Commission to ignore the multiple disciplinary infractions that Plaintiff has incurred since 2015, as well as the absence of any mitigating programming that might make him more parole suitable. The Commission must determine an offender's suitability for parole in light of *all* relevant available evidence at the time of the eligibility review. Ordering the Commission to conduct a thought exercise as if it were back in 2015 would be pointless.

Accordingly, for the reasons stated, the court finds that Plaintiff has failed to state a claim under the Rehabilitation Act.[4]

### B. The Commission's Alleged Failure to Adopt Regulations

The Complaint contains allegations that suggest Plaintiff also seeks to advance a challenge to the Commission's regulations for what they *do not* provide. According to Plaintiff, the Commission's regulations do not acknowledge the non-discrimination principle embedded in the Rehabilitation Act or provide a process by which an offender can request reasonable accommodations in parole determinations, particularly under the 1987 Guidelines. *See* Compl. ¶¶ 112–13. Indeed, at oral argument, Plaintiff stated that, as relief, he also seeks an order compelling the Commission to adopt regulations to "carry out" the Rehabilitation Act. *See* Hr'g Tr. (draft), March 15, 2019, at 29–30 (arguing the Commission should "at least have a means of responding to requests for accommodation"); *see also* 29 U.S.C. § 794(a) (providing that "[t]he

---

[4] The court believes that it has appropriately considered the Commission's records even on a motion to dismiss because the records either were attached to Plaintiff's Complaint or incorporated therein by reference. If the court is wrong, and the addition of records by Defendants converted their motion into one for summary judgment, the court still would have found in favor of Defendants. There is no genuine dispute of material fact as to what evidence the Commission considered in 2017 and its reasons for denying parole. Discovery would not have altered those facts.

head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the [Rehabilitation Act].").

The court need not consider that potential claim or the requested relief at this time. Plaintiff brings only a single claim in this case—under the Rehabilitation Act. *See* Compl. at 20–21. But the Rehabilitation Act does not provide Plaintiff with a cause of action to compel the Commission to promulgate regulations. *Cf. SAI v. Dep't of Homeland Security*, 149 F. Supp. 3d 99, 112 (D.D.C. 2015) (holding that the Rehabilitation Act does not provide a private cause of action to compel an agency to enforce its own Rehabilitation Act implementing regulations). Such action, if it exists, would arise under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(1) (providing that courts "shall compel agency action unlawfully withheld or unreasonably delayed."); *cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). Plaintiff has not, however, brought an action under the APA. The Complaint therefore contains no cause of action that would enable the court to grant the relief that Plaintiff seeks. The court therefore dismisses, without prejudice, Plaintiff's Rehabilitation Act claim insofar as it seeks to compel the Commission to adopt implementing regulations.

V.  **CONCLUSION AND ORDER**

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 11, is granted in part with prejudice and in part without prejudice. Plaintiff may amend his Complaint within 30 days to advance an APA claim. In inviting Plaintiff to do so, the court expresses no view on whether this plaintiff has standing to assert such claim. The court will enter a final order if Plaintiff declines to amend his Complaint.

Dated: March 25, 2019

Amit P. Mehta
United States District Judge

15