# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARKIST BANNISTER,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-01397 (APM) |
| **UNITED STATES PAROLE COMMISSION,** et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I.

Plaintiff Markist Bannister is a federal prisoner with intellectual disabilities who suffers from severe paranoid schizophrenia. He alleges that Defendant United States Parole Commission ("Commission") has failed to establish procedures providing reasonable accommodations to prisoners with mental and intellectual disabilities when making parole determinations. This court previously dismissed Plaintiff's failure-to-accommodate claim under the Rehabilitation Act but permitted him to amend his Complaint to challenge the Commission's failure to adopt regulations implementing the Act. *See generally* Mem. Op. and Order, ECF No. 18.

In an Amended Complaint, Plaintiff now advances a claim to compel agency action "unlawfully withheld or unreasonably delayed" under Section 706(1) of the Administrative Procedure Act (APA). *See* Am. Compl., ECF No. 20, ¶¶ 116–21. Plaintiff challenges the Commission's alleged inaction—specifically, its failure to take affirmative steps to "(1) identify individuals with disabilities who are participating in [the parole program], (2) identify whether modifications to that program are possible to ensure that those with disabilities are not 'arbitrarily

deprived' of the benefits of parole . . . and (3) implement those modifications." Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss the Am. Compl., ECF No. 28 [hereinafter Pl.'s Mot.], at 9. Plaintiff seeks declaratory and injunctive relief that would compel the Commission to, among other things, adopt "a fair process or procedure for properly accounting for a parole applicant's disabilities." Am. Compl. at 27. Plaintiff also reasserts his individual failure-to-accommodate claim. *See id.* ¶¶ 101–15.

The Commission moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiff's claim is not legally cognizable under the APA. Mem. of P. & A. Supporting Defs.' Mot. to Dismiss, ECF No. 24-1, at 5–12. It also moves to dismiss Plaintiff's renewed failure-to-accommodate claim based on the court's previous ruling. *See id.* at 12–13. For the reasons that follow, the court grants Defendant's motion and dismisses the Amended Complaint.

II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that the defendant has acted unlawfully, and that the unlawful action (or inaction) has injured the plaintiff in such a way that can be redressed by a favorable decision of the court. *Id.* at 678. At the motion to dismiss stage, the court must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

III.

Plaintiff brings his claim under Section 706(1) of the APA, which empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Section 706(1) codifies the common law writ of mandamus and permits a court to compel an agency "to perform a ministerial or non-discretionary act" amounting to "a specific, unequivocal command." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63, 64 (2004) (internal quotation marks omitted); *see also Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016). In *Norton v. Southern Utah Wilderness Alliance*, the Supreme Court explained that "a claim under [Section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *id*. at 64, and Section 706(1) cannot be used "to enter general orders compelling compliance with broad statutory mandates," *id*. at 66. The *Norton* plaintiffs claimed that the Bureau of Land Management's failure to prohibit the use of off-road vehicles ("ORVs") on protected federal lands violated its mandate to "continue to manage [the land] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness." *Id.* at 65 (quoting 43 U.S.C. § 1782(c)). The Court found that the plaintiffs had not challenged an action the agency was required to take because the statute "assuredly d[id] not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of ORV use." *Id.* at 66. The Court also made clear that failure to comply with the broad, "required" statutory mandate of 43 U.S.C. § 1782 was not sufficiently discrete to constitute an agency action. Although the plaintiffs argued that the statute contained "a categorical imperative, namely, the command to comply with the nonimpairment mandate," the Court concluded that "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action." *Id*. In so doing,

the Court rejected the argument that it could "simply enter a general order compelling compliance with that mandate, without suggesting any particular manner of compliance." *Id.*

The requirements of Section 706(1) have been described as "exacting." *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014). The "discrete agency action" limitation "precludes . . . broad programmatic attack[s]," *Norton*, 542 U.S. at 64, while the "*required* agency action" limitation "rules out judicial direction of even discrete agency action that is not demanded by law," *id.* at 65. If, for example, "an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.*

Plaintiff's APA claim falls squarely within the bounds of *Norton*. Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency
> . . . .

29 U.S.C. § 794(a). The Act thus creates a broad, mandatory prohibition against discrimination based on disability. Though this prohibition applies to the Commission, the statute says nothing of how the Commission must go about ensuring that no qualified individual with a disability is "excluded from the participation in" or "denied the benefits of" parole, much less what procedures the Commission must adopt related to considering accommodations in the parole context. In other words, the statute does not mandate the action that Plaintiff seeks "with the clarity necessary to support judicial action under [Section] 706(1)." *Norton*, 542 U.S. at 66; *see also In re Long-*

*Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d at 634 (denying request to force the Internal Revenue Service to issue a "specific refund procedure" for unlawfully collected telephone excise taxes because the statute "at most requires *some* form of tax refund procedure"); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 891 (D.C. Cir. 2014) (noting that a statute's language mandating that "'the Secretary shall comply with tribal laws' . . . contain[ed] only a general follow-the-law directive" and "flunk[ed] [*Norton*'s] discreteness test" (quoting 25 U.S.C. § 3712(b))).

To be sure, the Rehabilitation Act does provide that "[t]he head of each [Executive] agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation Act]," 29 U.S.C. § 794(a), but even that direction is simply too broad to compel agency action. The D.C. Circuit faced a similar statute in *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011). There, the court evaluated Section 7477 of the Clean Air Act, which provides that "[t]he [Environmental Protection Agency] Administrator shall . . . take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility . . . proposed to be constructed" in an attainment area. *See id.* at 851 (citing 42 U.S.C. § 7477). Notwithstanding the statute's use of the word "shall," the court agreed with the "Administrator that she had sufficient discretion to render her decision not to act nonjusticiable." *Id.* at 856. The court observed that the statute's use of the term "as necessary" "leaves it to the Administrator's discretion to determine what action is 'necessary'" and did not provide sufficient "legal standards for judicial review of the Administrator's decision not to act." *Id.* So, too, here. Conferring authority upon agency heads to promulgate regulations "as necessary" to carry out the Rehabilitation Act imparts broad discretion on whether and how to act and offers no meaningful judicial standard by which to evaluate inaction. The "exacting" statutory command necessary to compel agency action under

5

Section 706(1) is therefore absent in the Rehabilitation Act.  *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 26 (D.D.C. 2017) (citing *Sierra Club v. Jackson*) ("[I]t is well established that the formulation that an agency 'shall' take certain action 'as necessary' lacks the degree of mandatoriness needed to give rise to a claim under 5 U.S.C. § 706(1).").

Lacking a statutory foothold, Plaintiff attempts to support his Section 706(1) claim with case law expounding upon the duties imposed by the Rehabilitation Act.  *See* Pl.'s Mot. at 6–9 (citing *Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015); *Se. Comm. Coll. v. Davis*, 442 U.S. 397 (1979)).  That effort is unavailing.  In *Pierce v. District of Columbia*, for example, the court held that prison officials at the District of Columbia's Correctional Treatment Facility had an "affirmative duty to assess the potential accommodation needs of inmates with known disabilities . . . and to provide the accommodations that are necessary for those inmates to access the prison's programs and services."  128 F. Supp. 3d at 272.  But the claim in *Pierce* was a straightforward discrimination claim brought directly under the Americans with Disabilities Act and the Rehabilitation Act.  The *Pierce* plaintiff did not seek to compel through the APA the promulgation of regulations implementing certain procedures.  Nor does the Supreme Court's decision in *Southeastern Community College v. Davis* help Plaintiff.  *Davis* involved an individual challenge for failure to accommodate.  *See* 442 U.S. at 402–03.  The Court merely explained in general terms an entity's statutory obligation to accommodate disabilities, *see id.* at 412–14, but nothing in the opinion establishes the kind of "specific, unequivocal command" required under *Norton* to compel agency action.  542 U.S. at 64 (citation omitted).  Thus, neither *Pierce* nor *Davis* aid Plaintiff's effort to define a statutory requirement that can be compelled under the APA.

At bottom, the Rehabilitation Act provision upon which Plaintiff relies provides only a broad statutory mandate that the Commission must follow.  The Supreme Court has made clear

6

that courts are not empowered "to enter general orders compelling compliance with broad statutory mandates" and that "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action."  *Norton*, 542 U.S. at 66; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[R]espondent cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made.").  As the Court noted in *Norton*, recognizing Plaintiff's claim here would necessarily "mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the [Rehabilitation Act], injecting the judge into day-to-day agency management."  542 U.S. at 66–67.  The APA does not contemplate, nor could this court provide, such oversight.

IV.

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 24, is granted, and Plaintiff's APA claim, Count 2 of the Amended Complaint, is dismissed.  The court also dismisses Count 1, Plaintiff's realleged Rehabilitation Act claim, as previously decided.  *See* Mem. Op. and Order, ECF No. 18.

A final, appealable order accompanies this Memorandum Opinion.

Dated: January 7, 2020

Amit P. Mehta
United States District Judge

7